**In the Matter of Aubrey D. HIGGIN-BOTHAM and the Washington County, Pennsylvania, Housing Authority.**

Civ. A. No. 62-535.

United States District Court
W. D. Pennsylvania.

Sept. 24, 1963.

Tempest & Simmons, Monongahela, Pa., for Aubrey D. Higgenbotham.

Edward V. Sciamanna, Washington, Pa., for Washington County, Pa., Housing Authority.

Gustave Diamond, U. S. Atty., for United States Civil Service Commission.

GOURLEY, Chief Judge.

This is a petition for review of an Order of the United States Civil Service Commission under Section 12 of what is commonly known as the Hatch Act, 5 U. S.C.A. § 118k.

The appeal relates to whether the respondent, Aubrey D. Higginbotham, violated Section 12 of the Act, when, while serving as a maintenance mechanic for the Washington County Housing Authority, Pennsylvania, he ran for the office of, and was elected, alderman in the City of Washington, Pennsylvania.

The issues presented for determination are as follows:

[1] (1) Does a person who is a candidate and is elected alderman in a municipality of the Commonwealth of Pennsylvania during his employment with a state housing agency subsidized in part by an agency of the United States violate the provisions of what is commonly known as the Hatch Act or is said person exempt therefrom?

The answer is "yes."

(2) Does a person who is an employee of a state housing agency have a right under the Hatch Act to challenge the alleged illegal use of federal funds by said agency in maintaining separate but equal housing facilities for the white and the negro race when said practice is known to the Public Housing Administration?

The answer is "no."

(3) Does the appropriation and allocation of funds by the United States, which are knowingly permitted to be used by the Public Housing Administration, a federal agency, and used by the state housing agency for maintenance of segregated but equal housing facilities, bar the application of the Hatch Act to an employee of a state housing agency?

The answer is "no."

## DISCUSSION

(1) Does a person who is a candidate and is elected alderman in a municipality of the Commonwealth of Pennsylvania during his employment with a state housing agency subsidized in part by an agency of the United States violate the provisions of what is commonly known as the Hatch Act or is said person exempt therefrom?

Section 12 of the Act provides, inter alia, as follows:

"No officer or employee of any State or local agency whose principal employment is in connection with any activity which is financed in whole or in part by loans or grants made by the United States or by any Federal agency shall (1) use his official authority or influence for the purpose of interfering with an election or a nomination for office, or affecting the result thereof, or * *. No such officer or employee shall take any active part in political management or in political campaigns."

The exemption part of Section 12 provides, inter alia, that *officers holding elective offices* are excepted from the Act.

Unquestionably, at the time Higginbotham was employed by the state housing agency, although he was in the trucking business, had a rooming house, and was elected as an alderman or magistrate, his principal employment was that of a maintenance mechanic for the Authority.

It is my considered judgment that Higginbotham was not an officer holding an elective office which would bring him within the exemption of the Act. The Act did not mean that officers holding elective offices related to a person who was elected an officer in a municipality or a state, but rather referred to an officer of a state agency or authority for whom he was principally employed.

The fact that members of the State Authority knew of Higginbotham's political activities and made no objections to his activities until the instant proceeding, does not alter or affect said conclusion.

The Federal Government may not be estopped by actions of an agent not with-

in the scope of his actual authority. See Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

The record of the Civil Service Commission contains substantial evidence to support the conclusion that the principal employment of Higginbotham was with the Housing Authority of the City of Washington, Pennsylvania; that the holding of elective office as alderman did not exempt him from the operation of the Hatch Act, and that Higginbotham did not fall within the exemption of the Hatch Act.

■ (2) Does a person who is an employee of a state housing agency have a right under the Hatch Act to challenge the alleged illegal use of federal funds by said agency in maintaining separate but equal housing facilities for the white and the negro race when said practice is known to the Public Housing Administration?

(3) Does the appropriation and allocation of funds by the United States, which are knowingly permitted to be used by the Public Housing Administration, a federal agency, and used by the state housing agency for maintenance of segregated but equal housing facilities, bar the application of the Hatch Act to an employee of a state housing agency?

The legal theses enunciated in Questions (2) and (3) are so inter-related that repetitious expression would be required if each of said questions were evaluated separate and apart. In view thereof the discussion of one necessarily includes an evaluation of the other.

The conditions which are practiced are unconstitutional and appropriate remedy exists in law to correct said illegal practices. There is no evidence in the case that Higginbotham has been discriminated against by said state authority. He does not live in any project under the supervision of the Authority and has never filed application for housing accommodations.

Higginbotham was not affected, directly or indirectly, financially or in any other way, by the maintenance of separate but equal housing facilities for the white and the negro race, and it would be an anomaly to permit such person to question that which he is endeavoring to attain, to wit, re-employment by said state Housing Authority.

■ Since a constitutional question cannot be raised by an individual whose rights are not directly or indirectly affected, especially where no attempt is made to enforce constitutional requirements or to attack the illegal practices, petitioner, Higginbotham, has no standing in a Hatch Act proceeding to challenge the illegal use of federal funds to maintain segregated housing.

Furthermore, even if petitioner has standing to challenge the unconstitutional use of federal funds, the illegal or unconstitutional course of conduct on the part of the federal housing agency and the state agency does not affect or alter the enforcement of the provisions of an Act of Congress, to wit, the Hatch Act, which has no relationship directly or indirectly to the Federal Housing Act, and, therefore, does not bar the application of the Hatch Act to an employee of such state agency.

The Public Housing Administration and the Civil Service Commission of the United States are separate and distinct agencies of the Federal Government, each of which has specific and designated authority, responsibility and duty. I know of no rule of law that prohibits one federal agency from enforcing laws of Congress where another governmental agency might be violating the provisions of law, or engaging in or permitting unconstitutional activities.

An appropriate Order is entered.

### ORDER

And now, this 24th day of September, 1963, the original order of the Civil Service Commission of the United States entered on May 16, 1962, and the subsequent order of the Commission entered on May 20, 1963, are in each instance sustained since substantial evidence exists to show political activity on the part of Aubrey D. Higginbotham, which

is prohibited by the Hatch Political Activities Act, and that Higginbotham engaged in political activity in violation of Section 12 of said Act, and that said violation or activity justified the removal of Higginbotham from his position with the Washington County, Pennsylvania, Housing Authority.